ANDREW E. PARIS (SBN 162562)
ALEXANDER AKERMAN (SBN 280308)
**ALSTON & BIRD LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, California 90071
Telephone:  (213) 576-1000
Facsimile:   (213) 576-1100
E-mail:
Drew.Paris@Alston.com
Alexander.Akerman@Alston.com

Attorneys for Defendant
ADOREME, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY LIRA, an individual and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>ADORME, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>             Defendant. | Case No.:  8:16-CV-1858-JVS-JG<br><br>Assigned to Honorable James V. Selna<br><br>**DEFENDANT ADOREME, INC.'S NOTICE OF MOTION AND MOTION TO STAY AND COMPEL ARBITRATION PURSUANT TO FEDERAL ARBITRATION ACT §§ 3 and 4**<br><br>Date:  January 30, 2016<br>Time: 1:30 p.m.<br>Crtrm:10C<br><br><br>Filing Date: October 11, 2016 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that at 1:30 p.m. on January 30, 2017, or as soon thereafter as counsel may be heard in Courtroom 10C of the above-referenced Court, located at 411 West 4th Street, Santa Ana, CA 92701, Defendant AdoreMe, Inc. ("AdoreMe") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4 and the arbitration agreements between Plaintiff and AdoreMe for an Order staying Plaintiff's claims against AdoreMe and compelling arbitration.

This Motion is based on this Notice of Motion and Motion to Stay and Compel Arbitration Pursuant To Federal Arbitration Act §§ 3 and 4, the attached Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Bogdan Lucaciu and exhibits attached thereto and upon such other matters and further argument as may be presented at the time of the hearing of this motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 2, 2016.


DATED: December 1, 2016          Respectfully submitted,

                                 ANDREW E. PARIS
                                 ALEXANDER AKERMAN
                                 **ALSTON & BIRD LLP**


                                 /s/ Andrew E. Paris
                                 _____
                                                    Andrew E. Paris
                                 Attorneys for Defendant
                                 **ADOREME, INC.**

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION .................................................................. 1

II.   BACKGROUND .................................................................. 2

    A.    AdoreMe's Business and the AdoreMe Website ....................................... 2

    B.    Ms. Lira Created an AdoreMe Account, Purchased Products in May and June, and Accepted AdoreMe's Original TOU and Arbitration Clause .............................................................................. 4

    C.    Plaintiff filed this Lawsuit Despite Agreeing to Arbitrate Her Claims ............................................................................................. 6

    D.    Plaintiff Purchased Three More Products from AdoreMe After Filing Her Complaint and Accepted AdoreMe's Updated Terms & Conditions ................................................................. 7

III.  ARGUMENT ..................................................................... 10

    A.    The FAA Applies and Requires Enforcement of the Parties' Arbitration Agreement .......................................................... 10

    B.    Plaintiff Agreed to Arbitrate Her Claims with AdoreMe ....................... 12

    C.    Plaintiff's Claims Fall Within the Scope of Plaintiff's Arbitration Agreement .................................................................. 15

    D.    Plaintiff's Arbitration Agreements are Valid and Enforceable Under New York Law ............................................................. 17

        1.    Plaintiff Must Prove Her Arbitration Agreement to be both Procedurally and Substantively Unconscionable to Render it Unenforceable ................................................. 19

        2.    Plaintiff's Arbitration Agreements Are Not Procedurally Unconscionable ................................................ 20

        3.    Plaintiff's Arbitration Agreement Is Not Substantively Unconscionable ................................................ 23

IV.   CONCLUSION .................................................................. 24

i

LEGAL02/36476181v1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alghanim v. Alghanim,*
   828 F. Supp. 2d 636 (S.D.N.Y. 2011) ...................................................... 16

*Allied-Bruce Terminix Cos. v. Dobson,*
   513 U.S. 265 (1995) .......................................................................... 10

*Anderson Plant, LLC v. Batzer Const., Inc.,*
   No. 2:13-CV-02109-KJM, 2014 WL 800293 (E.D. Cal. 2014) ............................ 16

*Anonymous v. JP Morgan Chase & Co.,*
   No. 05 CIV. 2442 (JGK), 2005 WL 2861589 (S.D.N.Y. Oct. 31,
   2005) .................................................................................................. 22

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011) .......................................... 10, 11, 12, 16, 18, 20

*Bar-Ayal v. Time Warner Cable Inc.,*
   No. 03 CV 9905 KMW, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ...... 18, 19, 21

*Bourne v. Walt Disney Co.,*
   68 F.3d 621 (2d Cir. 1995) ................................................................ 17

*Caley v. Gulfstream Aerospace Corp.,*
   428 F.3d 1359 (11th Cir. 2005) ........................................................... 17

*Cape Flattery Ltd. v. Titan Mar., LLC,*
   647 F.3d 914 (9th Cir. 2011) .............................................................. 16

*Circuit City Stores, Inc. v. Adams,*
   532 U.S. 105 (2001) .......................................................................... 11

*City of Reno, Nev. v. Goldman, Sachs & Co.,*
   135 S. Ct. 477 (2014) ........................................................................ 17

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
   58 F.3d 16 (2d Cir.1995) ................................................................... 16

*Cooper v. MRM Inv. Co.,*
   367 F.3d 493 (6th Cir. 2004) .............................................................. 17

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Cullinane v. Uber Techs., Inc.*,
    No. CV 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016) ................ 15

*Damato v. Time Warner Cable, Inc.*,
    No. 13-CV-994 ARR RML, 2013 WL 3968765 (E.D.N.Y. July 31,
    2013) ..................................................................................................... 11, 18, 23

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).............................................................................................. 11

*Directv, a Delaware corporation v. Factory Mut. Ins. Co.*, 160 F. Supp.
    3d 1193, 1197 (C.D. Cal. 2016). ......................................................................... 18

*Fagerstrom v. Amazon.com, Inc.*,
    141 F. Supp. 3d 1051, 1057-58, 1069 (S.D. Cal. 2015).............................. 14, 15, 22

*Fazio v. Lehman Brothers Inc.*,
    340 F.3d 386 (6th Cir. 2003) ............................................................................... 17

*First Options of Chi., Inc., v. Kaplan*,
    514 U.S. 938 (1995).............................................................................................. 17

*Frankel v. Citicorp Ins. Servs., Inc.*,
    No. 11-CV-2293 NGG RER, 2014 WL 10518555 (E.D.N.Y. Aug. 12,
    2014) ..................................................................................................................... 19

*Gillman v. Chase Manhattan Bank*,
    N.A., 537 N.Y.S.2d 787 (1988)........................................................................... 19

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir.) ........................................................................................ 17

*Graf v. Match.com, LLC*,
    No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ............... 14, 15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)......................................................................................... 11, 18

*Harrington v. Atl. Sounding Co.*,
    602 F.3d 113 (2d Cir. 2010) ................................................................................ 18

*Jackson v. S.A.W. Entm't Ltd.*,
    629 F. Supp. 2d 1018 (N.D. Cal. 2009)................................................................ 21

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) ........................................................................ 18

*Mance v. Mercedes-Benz USA*,
   901 F.Supp.2d 1147, 2012 WL 4497369 (N.D. Cal. 2012) ..................................... 18

*Mohamed v. Uber Technologies, Inc.*,
   836 F.3d 1102 (9th Cir. 2016) ........................................................................ 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................. 11, 16

*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) ............................................................ 19, 20

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...................................................................... 13, 14

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ................................................................................. 10, 12

*Randolph v. Green Tree Fin. Corp.-Ala.*,
   244 F.3d 814 (11th Cir. 2001) ........................................................................ 11

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506, 510-11 (1974) ........................................................................... 11

*Selden v. Airbnb, Inc.*,
   No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) .................... 15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   498 F.3d 976 (9th Cir. 2007) ......................................................................... 19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ....................................................................... 18

**STATE CASES**

*Baltazar v. Forever 21, Inc.*,
   62 Cal.4th 1237 (2016) .............................................................................. 19

*Bono v. David*,
   147 Cal. App. 4th 1055 (2007) ..................................................................... 16

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Brower v. Gateway 2000, Inc.*,
    676 N.Y.S.2d 569 (1998) .................................................................. 19, 20, 21

*Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*,
    186 Cal. App. 4th 556 (2010) ......................................................................... 18

*Dean Witter Reynolds, Inc. v. Superior Court*,
    211 Cal. App. 3d 758 (Ct. App. 1989) (collecting California cases) ...................... 21

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal.4th 951 (1997) ...................................................................................... 18

*Flores v. West Covina Auto Grp.*,
    212 Cal. App. 4th 895 (2013) ......................................................................... 18

*Graham v. Scissor-Tail, Inc.*,
    28 Cal.3d 807 (1981) ....................................................................................... 20

*In re Arbitration Between Ayco Co., L.P*,
    770 N.Y.S.2d 453 (2004) ................................................................................. 12

*In re Conifer Realty LLC (EnviroTech Servs., Inc.)*,
    964 N.Y.S.2d 735 (2013) ................................................................................. 19

*Madden v. Kaiser Found. Hosps.*,
    17 Cal.3d 699 (1976) ....................................................................................... 11

*Molecular Analytical Sys. v. Ciphergen Biosystems., Inc.*,
    186 Cal. App. 4th 696 (2010) ......................................................................... 12

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ....................................................................... 21

*Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co. of Am.*,
    37 N.Y.2d 91 (1975) ......................................................................................... 11

*People v. Int'l Fid. Ins. Co.*,
    185 Cal. App. 4th 1391 (2010) ....................................................................... 18

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal.4th 223 (2012) ................................................................................. 20, 23

*Ranieri v. Bell Atl. Mobile*,
    304 A.D.2d 353 (2003) ............................................................................... 20, 21

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Reigelsperger v. Siller,*
    40 Cal.4th 574 (2007) ........................................................................................ 18

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal.4th 899 (2015) ................................................................................. 19, 20

**FEDERAL STATUTES**

9 U.S.C. § 2 ........................................................................................................ 10

9 U.S.C. § 3 ........................................................................................................ 12

9 U.S.C. § 4 ........................................................................................................ 12

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

LEGAL02/36476181v1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Kathy Lira agreed to a broad arbitration agreement with Defendant AdoreMe, Inc. when she purchased products on three separate occasions from AdoreMe's website.  Be agreeing to AdoreMe's Terms and Conditions of Use ("Terms of Use" or "TOU"), Plaintiff obtained the benefits of AdoreMe's services and products and consented to individually arbitrate disputes in her hometown area under American Arbitration Association rules.  AdoreMe agrees to pay for the entirety of Plaintiff's arbitration filing fees and share of the arbitrator's fees, as well as Plaintiff's attorneys' fees up to $5000.  The arbitration agreement provides a consumer-friendly and efficient means of resolving Ms. Lira's dispute.  As set forth more fully below, AdoreMe's motion to stay should be granted because:

- Plaintiff agreed to arbitrate her disputes with AdoreMe on three separate occasions.  Plaintiff's broad agreement to arbitrate encompass any disputes "arising out of or relating to" Plaintiff's agreement with AdoreMe, "including with respect to the interpretation of any provision of" Plaintiff's agreement with Adore Me "or concerning the performance or obligations of AdoreMe."  (*See* Declaration of Bogdan Lucaciu filed concurrently herewith ("Lucaciu Decl."), Exs. D (Original Terms of Use) and E (Updated Terms of Use).)[1]

- All of Plaintiff's claims fall within the broad scope of her arbitration agreement.  Specifically, each claim hinges on allegations related to AdoreMe's products and services and related billing disputes.

- Plaintiff accepted the arbitration agreement when she purchased AdoreMe's products and the agreement is enforceable and not unconscionable under the parties' choice of New York law (as well as the

---

[1] All citations to exhibits in this motion are to exhibits attached to the Lucaciu Declaration.

1    substantively identical principles of California law).

2        In sum, Plaintiff willingly undertook the contractual obligation to arbitrate her

3    claims in exchange for access to AdoreMe's services and products.  Under the Federal

4    Arbitration Act ("FAA"), Plaintiff is obligated to pursue this dispute in arbitration.

5    AdoreMe's motion should be granted and this matter stayed pending completion of the

6    arbitration.

7    **II.    BACKGROUND**

8        **A.    AdoreMe's Business and the AdoreMe Website**

9        AdoreMe is an online retailer that offers women's clothing for purchase to

10   customers in the United States, Canada, and Australia.  (Lucaciu Decl., ¶ 2.)  Customers

11   may access AdoreMe's website using their desktop/laptop computers or by using their

12   mobile devices, such as a mobile phone or tablet.  The shopping experiences on both

13   platforms are very similar, as described below.  To purchase products from AdoreMe,

14   a customer must first create a digital account with AdoreMe.  (*Id*., ¶¶ 2, 4.)  To create

15   an AdoreMe account a customer must go to AdoreMe's Sign-Up page, either on the

16   desktop or mobile website platform, enter a valid email address, and create a password.

17   (*Id*.)  The email address and password entry fields are located in a shaded graphic box.

18   (*Id*.)  Within the same shaded graphic box, under the entry fields, is an underlined

19   hyperlink to AdoreMe's Original Terms and Conditions of Use ("Original TOU").  (*Id*.)

20   Clicking on the hyperlink takes the customer directly to the Original TOU.  (*Id*.)

21       Once a customer creates a digital account with AdoreMe, the customer is able to

22   shop and purchase products.  The customer may purchase products on a "pay as you

23   go" basis or by becoming a "VIP Member."  (*Id*., ¶ 2.)  The subscription VIP

24   Membership provides certain benefits to the customer, including substantial discounts

25   on merchandise.  (*Id*.)

26       Regardless of whether a customer opts to purchase products on a "pay as you"

27   basis or through the VIP Membership, after a customer selects an item she wishes to

28   purchase, it is placed in her online shopping cart.  On the Desktop website, to check out

---

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

and purchase any product in the shopping cart, the customer clicks on the shopping bag icon at the top of website. (*Id*., ¶ 5.) This takes the customer to the Shopping Bag page. If the customer has not already opted to become a VIP Member, on this screen she will be able to choose to make the purchase on a "pay as you go" basis or by becoming a "VIP Member." The customer is then directed to enter her shipping and billing information. (*Id*.) The next step in the purchase process (whether "pay as you go" or "VIP") is the Checkout Page, which summarizes the contents of the order and the total purchase price. (*Id*., Ex. B.) It prominently displays a textual notice immediately under the "PLACE ORDER" button which states: "By purchasing, you agree with the Adore Me Terms & Conditions." (*Id*.) The "Adore Me Terms & Conditions" in the notice is hyperlinked and highlighted in red text. (*Id*.) Clicking on the highlighted hyperlink takes the customer directly to the Terms of Use, which include an arbitration provision. (*Id*., ¶ 5.) To place an order, the customer must click on the "PLACE ORDER" button above the notice regarding their agreement to the AdoreMe Terms of Use. (*Id*.)

When a customer uses a mobile phone to shop, she accesses the AdoreMe Mobile website. On the Mobile website, to check out and purchase any product in the shopping cart, the customer must navigate to the AdoreMe Mobile Shopping Bag Page by clicking the shopping bag icon. (*Id*., ¶¶ 6, 8.). The Shopping Bag Page summarizes the contents of the order and the total purchase price. (*Id*., Ex. C, F.) It prominently displays a textual notice immediately above the "Continue to Checkout" button which states: "By purchasing, you agree with the Adore Me Terms & Conditions," with a hyperlink to AdoreMe's Updated Terms of Use highlighted in bold and underlined. (*Id*.) Clicking on the hyperlink takes the customer directly to the Updated Terms of Use. (*Id*., ¶¶ 6, 8.) To place an order, the customer must click on the "Continue to Checkout" button and confirm her purchase. (*Id*.)

///

///

///

**B.** **Ms. Lira Created an AdoreMe Account, Purchased Products in May and June, and Accepted AdoreMe's Original TOU and Arbitration Clause**

On May 11, 2016,[2] Plaintiff created an account with AdoreMe through AdoreMe's main or "Desktop" version of its website, using a desktop or laptop computer. (*Id*., ¶ 4.) As described above, Ms. Lira was required to enter an email address and create a password to create her account. During this time an underlined hyperlink to AdoreMe's Original Terms of Use was present beneath the entry fields for Plaintiff's email and password, in the same shaded graphic box. (*Id*., Ex. A.) Clicking on the Original TOU hyperlink would take Plaintiff directly to the terms. (*Id*.)

After creating her account on May 11, Plaintiff shopped online using the Desktop version of AdoreMe's website and selected one item which she placed in her online shopping bag. (*Id*., ¶ 5.) Plaintiff then elected to purchase the product by joining AdoreMe's VIP Membership program. (*Id*.) As described above, to purchase the product Plaintiff navigated to AdoreMe's Checkout Page which prominently displays a textual notice immediately under the "PLACE ORDER" button which states: "By purchasing, you agree with the Adore Me Terms & Conditions". (*Id*., Ex. B.) The hyperlink to AdoreMe's Original TOU was highlighted in red text and clicking on the hyperlink would take Plaintiff directly to the Original TOU. (*Id*.) Plaintiff clicked on the "PLACE ORDER" button directly above the notice regarding her agreement to the Original TOU to complete her purchase. (*Id*., ¶ 5.)

On June 6, 2016, Plaintiff accessed AdoreMe's Mobile website. (*Id*., ¶6.) She selected one item, put it in her online shopping bag, and then proceeded to check out. (*Id*.) Plaintiff was required to navigate to the AdoreMe Shopping Bag Page and click the "Continue to Checkout" button, which is located immediately below a textual notice which states: "By purchasing, you agree with the Adore Me Terms & Conditions," with a hyperlink to AdoreMe's Original TOU highlighted in bold and underlined. (*Id*., Ex.

---

[2] All dates below refer to the year 2016, unless otherwise stated.

C.)  Plaintiff clicked on the "Continue to Checkout" button and confirmed her purchase. (*Id.*, ¶6.)

By purchasing AdoreMe's products and using its services, Plaintiff agreed to be bound by the Original TOU hyperlinked adjacent to prominent buttons in both the Desktop and Mobile versions of the website:

> By using the AdoreMe, Inc. website (the "Site"), you agree to follow and be bound by these Terms and Conditions (the "Terms")… It is your responsibility to review these Terms and Conditions periodically. If at any time you find these Terms and Conditions unacceptable or if you do not agree to these Terms and Conditions, please do not use this Site.

(Ex. D, Original TOU, ¶¶ 1-2.)

The Original TOU contains a broad arbitration agreement which requires arbitration of "all disputes and claims" including "[c]laims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory" and "[c]laims that arose before these or any prior Terms (including, but not limited to, claims relating to advertising)." (*Id.*, Ex. D, Original TOU, Arbitration Agreement(a).)  The arbitration agreement further states in relevant part:

> Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.  AdoreMe is committed to resolving all disputes in a fair, effective, and cost-efficient manner.  Accordingly, our Terms and Conditions (the "Terms") provide that disputes will be resolved in binding arbitration or small claims court.  AdoreMe's arbitration provision, which is set forth below, has been designed to make arbitration as convenient and inexpensive for our customers as possible.  Among other things, it specifies that AdoreMe will bear all costs of arbitration (unless a customer's claims exceed $25,000 or an arbitrator determines that the claims are frivolous), and that, under certain circumstances (explained in the arbitration provision), AdoreMe will pay a premium if a customer receives an arbitration award greater than the value of

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

AdoreMe's settlement offer, and will pay the customer's reasonable attorney's fees.

\*\*\*

After AdoreMe receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee, unless your claim is for more than $25,000. (Currently, the filing fee is $125 for claims under $10,000, but this is subject to change by the arbitration provider. If you are unable to pay this fee, AdoreMe will pay it directly after receiving a written request at the Notice Address.)  The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, the "AAA Rules") of the American Arbitration Association (the "AAA"), as modified by these Terms, and will be administered by the AAA. The AAA Rules are available online at www.adr.org or by calling the AAA at 1-800-778-7879.

The arbitrator is bound by these Terms.  Unless AdoreMe and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your contact address.

(*Id.*, Ex. D, Original TOU, DEMAND FOR ARBITRATION; Arbitration Agreement(c).)

## C.   **Plaintiff filed this Lawsuit Despite Agreeing to Arbitrate Her Claims**

On October 7, Plaintiff initiated this lawsuit by filing her Class Action Complaint ("Complaint").  Plaintiff alleges that AdoreMe's Term of Use do not give adequate notice of the billing terms of the VIP Membership program.  (Complaint, ¶¶ 19-20.) Ms. Lira brings claims under California's Automatic Renewal Law and Unfair Competition Law. (*Id.*, ¶¶ 36-58.)  She also seeks to certify a class of allegedly similarly situated purchasers, notwithstanding the presence of a class action waiver in her arbitration agreement. (*Id.*, ¶¶ 26-35.)

///

///

**D.** **Plaintiff Purchased Three More Products from AdoreMe After Filing Her Complaint and Accepted AdoreMe's Updated Terms & Conditions**

As specified in the Original TOU, AdoreMe reserves the right to update its Terms & Conditions of Use from time to time. (Ex. D, Original TOU, ¶ 2.) AdoreMe exercised this right by posting updated Terms & Conditions of Use to its website effective September 8, 2016 ("Updated TOU"). (Lucaciu Decl., ¶7.) AdoreMe updated its contract before Ms. Lira filed her Complaint on October 7, 2016. (*Id.*) Ms. Lira was aware of and acknowledged the changes to AdoreMe's Terms & Conditions in her Complaint. (Complaint, ¶ 24 ("Defendant has purported to make changes in some of the language of its website pages where subscriptions are purchased and in its 'Terms and Conditions'").)

On October 31, despite having already filed her Complaint, Plaintiff used her mobile device to connect to AdoreMe's Mobile website and purchase three more products. (Lucaciu Decl., ¶ 8.) As with the June purchase, Ms. Lira could only purchase these products by advancing to the AdoreMe Shopping Bag Page. (*Id.*) Like during the June time period, AdoreMe's Shopping Bag Page prominently displays a text notice immediately over the "Continue to Checkout" button which states: "By purchasing, you agree with the Adore Me Terms & Conditions," with "Adore Me Terms & Conditions" hyperlinked and highlighted in bold and underlined. (*Id.*, Ex. F.) Clicking on the hyperlink would take Plaintiff directly to the Updated TOUs. (*Id.*, ¶ 8.) Ms. Lira clicked on the "Continue to Checkout" button and confirmed her purchase.[3] (*Id.*)

---

[3] Because the Updated TOU supersedes the Original TOU (Lucaciu Decl., Ex. E, p. 1 ("PLEASE READ THESE TERMS CAREFULLY. THESE TERMS MAY HAVE CHANGED SINCE YOU LAST ACCESSED OR USED THE SERVICES. BY ACCESSING OR USING ANY PART OF THE SERVICES, YOU AGREE TO THESE TERMS.").) (emphasis in original). AdoreMe seeks to compel arbitration pursuant to the updated terms. However, arbitration could equally be compelled under either set of terms as the arbitration provisions in the Original and Updated TOUs are substantively similar. (*Id.*, ¶ 10.) Under both, the arbitration is governed by the Federal Arbitration Act, rules of the American Arbitration Association ("AAA"), and, unless Plaintiff elects otherwise, is to take place in her local area. (*Id.*) Under the Updated TOUs AdoreMe agrees to pay for all arbitration and administration fees and legal fees up to a maximum of $5000: "Adore Me will pay for the entirety of the arbitrators' and administrative fees of arbitration and will pay for

At the very beginning of the contract, the Updated TOU expressly provide—in boldface and all capitalized text—that by using AdoreMe's service, Plaintiff agrees to be bound by the terms, which include an arbitration provision:

> **THE FOLLOWING TERMS AND CONDITIONS OF USE ("TERMS") GOVERN YOUR USE OF THE SERVICES, DEFINED BELOW IN ¶ 1, AND YOUR RELATIONSHIP WITH ADORE ME, INC., ITS EMPLOYEES, OFFICERS, DIRECTORS, AGENTS, SUBSIDIARIES, AND AFFILIATES ("WE," "OUR," "US," OR "ADORE ME").  THE FOLLOWING TERMS ARE SUBJECT TO ARBITRATION.**
>
> PLEASE READ THESE TERMS CAREFULLY. THESE TERMS MAY HAVE CHANGED SINCE YOU LAST ACCESSED OR USED THE SERVICES. BY ACCESSING OR USING ANY PART OF THE SERVICES, YOU AGREE TO THESE TERMS.  If at any time you find these Terms and Conditions unacceptable or if you do not agree to these Terms and Conditions, please do not use this Site or the Services. We may revise these Terms and Conditions at any time.
>
> **Notice of Agreement to Arbitrate and Class Action Waiver**
>
> **By accepting these Terms, you agree to resolve any dispute with us on an individual basis in arbitration, and to waive any right to pursue a class action or suit in court, except in matters that may be pursued on an individual basis in your local small claims court.**

(Ex. E, Updated TOU, p. 1.) (emphasis in original).

The arbitration agreement itself states in pertinent part:

> In the unlikely event that Adore Me's Customer Care department is unable to resolve your complaint to your satisfaction (or if Adore Me has not been able to resolve a dispute it has with you after attempting to do so informally), all disputes between you and Adore Me will be resolved by BINDING ARBITRATION. YOU HEREBY AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend your rights under

---

your legal fees up to a maximum of $5,000, regardless of the outcome of the Arbitration." (*Id.*).  AdoreMe agrees to honor this term for purposes of this dispute with Ms. Lira under either the Original or Updated TOU.  (*Id.*)

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

LEGAL02/36476181v1

this contract, except for matters that may be taken to small claims court. Your rights will be determined by a neutral arbitrator, NOT a judge or jury. You agree that any dispute arising out of or relating to this Agreement, including with respect to the interpretation of any provision of this Agreement or concerning the performance or obligations of Adore Me or you, shall be resolved by mandatory and binding arbitration which shall be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, the "AAA Rules") of the American Arbitration Association (the "AAA"), as modified by these Terms, and will be administered by the AAA. The AAA Rules are available online at www.adr.org or by calling the AAA at 1-800-778-7879.

Any dispute arising out of or relating to this Agreement, including with respect to the interpretation of any provision of this Agreement or concerning the performance or obligations of Adore Me or you, shall be governed by the Federal Arbitration Act and shall be resolved by mandatory and binding arbitration submitted to the AAA in accordance with the AAA Rules.

(*Id.*, pp. 11-12.)  The Update TOU is governed by New York law. (*Id.*, p. 13.)

AdoreMe's arbitration provision in the Updated TOU creates a mechanism whereby subscribers can efficiently and economically obtain resolution of disputes under pursuant to its rules, including the consumer-friendly American Arbitration Association ("AAA") procedures specifically designed for consumer disputes.  Further, arbitrations can be conducted either "by telephone or written submission" or "an in-person arbitration hearing will be conducted at an AAA facility [Plaintiff's] area or at an AAA facility in New York City, at [Plaintiff's] election." (*Id.*, p. 12.)  Additionally, AdoreMe agrees to "promptly reimburse" Plaintiff for "payment of any arbitration filing fee…[and] AdoreMe will pay for the entirety of the arbitrator's and administrative fees of arbitration and will pay for [Plaintiff's] legal fees up to a maximum of $5,000, regardless of the outcome of the Arbitration."  (*Id.*)

///

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

## III.   ARGUMENT

### A.   The FAA Applies and Requires Enforcement of the Parties' Arbitration Agreement

The FAA expressly provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." *Id.* The Supreme Court has expansively construed the phrase "involving commerce," interpreting it as extending the FAA's reach to the full limit of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). There is no question that the FAA applies to Plaintiff's arbitration agreement. Indeed, under the Original and Updated TOU the parties expressly agree that the Federal Arbitration Act governs the arbitration agreement and the transactions at issue involve interstate commerce—the online sale of retail merchandise to California citizen by a New York-headquartered corporation. (Lucaciu Decl., ¶ 2; Ex. D, Original TOU, Arbitration Agreement(a); Ex. E, Updated TOU, p. 12; Complaint, ¶ 8.)

"The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quotations and citations omitted). The FAA both "embod[ies]" and "declare[s] a national policy favoring arbitration." *Id.* at 1749; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA "as reflecting both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (internal citations and quotations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* (internal citations omitted). As the Supreme Court has recently stated:

> The purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written . . . ; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4

10

1   requires courts to compel arbitration "in accordance with the terms of the
2   agreement" upon the motion of either party to the agreement . . .

3   *Id.* at 1748 (citations omitted).

4       Time after time, the United States Supreme Court has recognized the strong
5   public policy in favor of arbitration.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S.
6   105, 115 (2001) (noting the pro-arbitration purposes of the FAA); *Green Tree Fin.*
7   *Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (enforcing agreement to arbitrate and
8   holding that Congress intended the FAA "'to reverse the longstanding judicial hostility
9   to arbitration agreements . . . and to place arbitration agreements upon the same footing
10  as other contracts'"); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (The
11  FAA expresses Congress' intent to reverse "centuries of judicial hostility to arbitration
12  agreements," citing H.R. Rep. No. 68-96, at 1, 2 (1924)); *see also Randolph v. Green*
13  *Tree Fin. Corp.-Ala.*, 244 F.3d 814, 818-19 (11th Cir. 2001) ("According to the
14  Supreme Court, the last time this case was before us we made the mistake of giving too
15  little weight to the FAA's pro-arbitration policy.  We decline to make the same mistake
16  again").  The strength of this federal policy, is "difficult to overstate."  *Damato v. Time*
17  *Warner Cable, Inc.*, No. 13-CV-994 ARR RML, 2013 WL 3968765 *3 (E.D.N.Y. July
18  31, 2013).  New York law and California law are in accord.  *Nationwide Gen. Ins. Co.*
19  *v. Inv'rs Ins. Co. of Am.*, 37 N.Y.2d 91 (1975) ("[T]he announced policy of this State
20  favors and encourages arbitration as a means of conserving the time and resources of
21  the courts and the contracting parties."); *Madden v. Kaiser Found. Hosps.*, 17 Cal.3d
22  699, 706 (1976) ("[A]rbitration has become an accepted and favored method of
23  resolving disputes . . .").

24      To further the FAA's purposes, the Supreme Court has emphasized that courts
25  should interpret arbitration clauses liberally in favor of arbitration.  *See Moses H. Cone*
26  *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts
27  concerning the scope of arbitrable issues should be resolved in favor of arbitration. . .
28  ."). Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also In re Arbitration Between Ayco Co., L.P,* 770 N.Y.S.2d 453, 455–56 (2004) ("The FAA evinces Congress's intent to establish 'an 'emphatic' national policy favoring arbitration which is binding on all courts, State and Federal such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (citations omitted); *Molecular Analytical Sys. v. Ciphergen Biosystems., Inc.*, 186 Cal. App. 4th 696, 705 (2010) ("'[D]oubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration.'").

The Supreme Court has instructed that courts should "'move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Preston*, 552 U.S. at 357. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 131 S. Ct. at 1749. Accordingly, this Court should grant AdoreMe's Motion because: (i) Plaintiff agreed to arbitrate; and (ii) Plaintiff's claims fall within the scope of her agreement to arbitrate. *See* 9 U.S.C. §§ 3, 4. For the reasons set forth below, because all of the requisite elements are satisfied in this case, the Court should stay this matter and require Plaintiff to arbitrate her claims.

**B.**   **Plaintiff Agreed to Arbitrate Her Claims with AdoreMe**

Plaintiff agreed to arbitrate, not litigate, the claims she asserts. On three separate occasions Plaintiff chose to purchase products by clicking a button in order to make a purchase when she was on clear notice that doing so meant that she agreed to arbitrate her disputes with AdoreMe. When Plaintiff purchased products from AdoreMe in May, she agreed to the Original TOU, including the arbitration provision, by clicking the "PLACE ORDER" button located immediately above the textual notice which stated: "By purchasing, you agree with the Adore Me Terms & Conditions" and included a hyperlink to AdoreMe's Original TOU highlighted in red text. (Lucaciu Decl., ¶ 5, Ex. B.) In June, she again accepted the Original TOU when she shopped on AdoreMe's Mobile website and clicked on the "Continue to Checkout" button located immediately

1  above the same textual notice with a bold and underlined hyperlink to the Original TOU.

2  (*Id.*, ¶ 6, Ex. C.)

3  Likewise, on October 31 Plaintiff again agreed to arbitrate her dispute with

4  AdoreMe by agreeing to the Updated TOU when shopping on AdoreMe's Mobile

5  website by clicking the "Continue to Checkout" button located immediately below the

6  textual notice which states: "By purchasing, you agree with the Adore Me Terms &

7  Conditions" and includes a hyperlink to AdoreMe's Updated TOU highlighted in

8  underlined and bold text.  (*Id.*, ¶ 8, Ex. F.)

9  Of note, Plaintiff's October 31 purchase came almost three weeks after she filed

10  her Complaint in which she discussed the substance of and changes to the Terms of Use

11  and even included a snapshot of the Checkout Page that featured the "PLACE ORDER"

12  button and textual notice.  (Complaint, ¶¶ 19-21.)  Given Plaintiff's investigation of the

13  terms, Plaintiff cannot argue that she was not aware that she accepted the Updated TOU,

14  including their arbitration provision.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d

15  1171, 1176 (9th Cir. 2014) (finding that "*any* evidence in the record that [Plaintiff] had

16  actual notice of the Terms of Use or was required to affirmatively acknowledge the

17  Terms of Use" would most likely result in an enforceable agreement because "courts

18  have consistently enforced browsewrap agreements where the user had actual notice of

19  the agreement.") (emphasis added).

20  Courts have found enhanced "browsewrap" agreements, like Plaintiff's with

21  AdoreMe, valid and have enforced arbitration agreements in almost identical situations.

22  For example, in a recent case in the Southern District the court compelled arbitration

23  where a textual notice with a highlighted hyperlink to the terms and conditions was

24  placed beneath a "review order" header on an Amazon checkout page where the plaintiff

25  had to click a "place your order" button to make a purchase:

26  Like all customers making purchases through Amazon, Plaintiffs were
  required to complete their orders by reviewing a final checkout page and
27  clicking a "Place your order" button located on that page…At the top of
  the checkout page, under the heading "Review your order," there is a notice
28  to customers stating that "By placing your order, you agree to
  Amazon.com's privacy notice and conditions of use."

13

***

Here, the Court finds that Plaintiffs did have reasonable notice. The text of the notice, which reads "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," is the first line of the checkout page entitled "Review your order."…The notice is located directly underneath the "Review your order" header such that it is clearly visible when viewing the page…The text is somewhat smaller than the text beneath it, but the hyperlink to the COUs is set off in blue-colored font.

*Fagerstrom v. Amazon.com, Inc*., 141 F. Supp. 3d 1051, 1057-58, 1069 (S.D. Cal. 2015) (citing *Nguyen*, 763 F.3d at 177 ("where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements.").)

In another case in the Central District, the court made clear that where (such as here) a plaintiff clicked on a "continue" button on a webpage after being notified that clicking meant the plaintiff agreed to the terms of use, the agreement to arbitrate is consistently enforced:

Defendant, on the other hand, has submitted admissible evidence that all users of the Match.com website during the relevant time period were required to affirmatively agree to the Terms of Use when they clicked on a "Continue" or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review….This type of "browsewrap" agreement commonly used to bind a website user to a website's terms of use are 'consistently enforced.'

*Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (citing *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1176 (9th Cir.2014)); *see also Nguyen*, 763 F.3d at 1178 n.1 (acknowledging courts have found valid agreements where a text notice adjacent to a button informed a user that proceeding would require the user to accept the terms) (citing *5381 Partners LLC v. Sharesale.com, Inc*., No. 12–CV–4263 JFB AKT, 2013 WL 5328324, at *7 (E.D.N.Y. Sept. 23, 2013) ("in addition to [a] hyperlink that appeared adjacent to the activation button users had to click on, website also contained a text warning near the button that stated 'By clicking and making a request to Activate, you agree to the terms and conditions in the [agreement]'")); *Cullinane v. Uber Techs., Inc.,* No. CV 14-14750-

14

DPW, 2016 WL 3751652, at *2 (D. Mass. July 11, 2016) ("The language surrounding the button leading to the Agreement is unambiguous in alerting the user that creating an account will bind her to the Agreement. And the word "Done," although perhaps slightly less precise than "I accept," or "I agree," makes clear that by clicking the button the user has consummated account registration, the very process that the notification warns users will bind them to the Agreement."); *Selden v. Airbnb, Inc*., No. 16-CV-00933 (CRC), 2016 WL 6476934, at *2 (D.D.C. Nov. 1, 2016) ("The text 'By signing up, I agree to Airbnb's Terms of Service' is conspicuous… It is placed in roughly the middle of the page, in close proximity to all three sign-up buttons. The text also appears in dark font, in sharp contrast to the white background. It is, moreover, clearly legible, appropriately sized, and unobscured by other visual elements. Although the text is not directly under the first or second alternative sign-up buttons, any reasonably-observant user would notice the text and accompanying hyperlinks.").

Like in *Fagerstrom*, *Graf*, and similar cases the textual notice given to Plaintiff made clear that by clicking the "PLACE ORDER" button she agreed to the Original TOU and by clicking on the "Continue to Checkout" button and confirming her purchase she agreed to the Updated TOU; the notice was explicit, prominently displayed next to an important button, and made clear that acceptance was tethered to clicking the button and making the purchase. Plaintiff was put on proper notice. By clicking the buttons in order to make her purchases, Plaintiff affirmed she was bound by the Terms of Use, which were always hyperlinked and available for review. Plaintiff agreed to arbitrate her claims with AdoreMe.

**C.    Plaintiff's Claims Fall Within the Scope of Plaintiff's Arbitration Agreement**

The Updated Terms and Conditions provide that:

> You agree that any dispute arising out of or relating to this Agreement, including with respect to the interpretation of any provision of this Agreement or concerning the performance or obligations of Adore Me or you, shall be resolved by mandatory and binding arbitration…

(Ex. E, Updated TOU, p. 12.)  It is settled that such language in an arbitration provision including the phrase "any claim . . . relating to" should be interpreted broadly.  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (when parties intend to include a broad arbitration provision, they provide for arbitration "arising out of or relating to" the agreement); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 652 (S.D.N.Y. 2011) ("an arbitration clause covering " '[a]ny claim or controversy arising out of or relating to th[e] agreement,'" is 'the paradigm of a broad clause.'") (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir.1995)).  *Anderson Plant, LLC v. Batzer Const., Inc.*, No. 2:13-CV-02109-KJM, 2014 WL 800293, at *4 (E.D. Cal. 2014) (the language "arising out of or related to" when used in an arbitration clause indicates that the scope of an arbitration clause is "broad and far reaching"); *Bono v. David*, 147 Cal. App. 4th 1055, 1067 (2007) ("a 'broad' clause includes those using language such as 'any claim arising from or related to this agreement'").

In fact, all Plaintiff's claims relate to and concern her agreements with AdoreMe, the services AdoreMe provided to her, and billing disputes with AdoreMe. (Complaint, ¶¶ 19-20, 36-58.)  Specifically, Plaintiff premises her claims on an allegation that the billing procedure under AdoreMe's VIP Membership problem is in violation of California statutes and that AdoreMe improperly billed her.  (*Id.*, ¶¶ 36-58.)  Because Plaintiff's claims fall squarely within the scope of her arbitration obligations, they must be arbitrated.  *See Concepcion,* 131 S.Ct. at 1748–49; *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Moreover, Plaintiff's claims cannot be maintained without reference to the Terms of Use; Plaintiff's claims are predicated on an explicit challenge to the terms. (Complaint, ¶ 19 ("During the Class Period, Defendant's webpage, found at www.adoreme.com contained a section entitled "Terms & Conditions". This is a document in which information concerning the recurring nature of Defendant's subscription programs or the manner in which the subscriptions may be canceled was

not set forth in clear and conspicuous language."); *id.* ¶ 20.) Put another way, Plaintiff's claims unquestionably relate to and concern Plaintiff's agreements with AdoreMe because they are maintained with reference to the Terms & Conditions. *See Fazio v. Lehman Brothers Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) (holding that any dispute that "must make reference" to the agreement containing the arbitration clause is "subject to arbitration"). Because Plaintiff's claims fall squarely within the scope of her arbitration obligations, they must be arbitrated.

### D.      Plaintiff's Arbitration Agreements are Valid and Enforceable Under New York Law

Although the FAA and the strong federal policy in favor of arbitration apply to Plaintiff's arbitration agreements, New York law applies in assessing potential arguments Plaintiff may raise against enforceability.[4] *First Options of Chi., Inc,. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts "should apply ordinary state-law principles" in determining enforceability of an arbitration agreement). "The 'federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir.), cert. denied sub nom. *City of Reno, Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014) ("we apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.").

Under New York law, the primary objective "is to give effect to the intent of the [contracting] parties as revealed by the language they chose to use."[5] *Bourne v. Walt*

---

[4]  The Updated TOU select New York state law as governing law. (Ex. E, Updated TOU, p. 13.) However, as outlined below New York and California law are fundamentally similar and encompass similar principles on issues related to contract enforceability including unconscionability. The outcome under both the law of both states is in accord.

[5]  Likewise, under California law the intent is to "give effect to the parties' mutual intent."

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Disney Co.*, 68 F.3d 621, 628–29 (2d Cir. 1995); *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905 KMW, 2006 WL 2990032, at *8 (S.D.N.Y. Oct. 16, 2006) ("In determining whether a party entered into a binding contract, courts eschew the subjective and look to objective manifestations of intent..."). In this case, Plaintiff's intent to arbitrate is plain; as explained above, Plaintiff agreed to arbitrate her claims against AdoreMe on three separate occasions and her claims fall well within the scope of her agreement to arbitrate.

If Plaintiff seeks to avoid her arbitration obligations, including on the basis of unconscionability, she bears the burden of proving a valid defense. *Harrington v. Atl. Sounding Co.,* 602 F.3d 113, 124 (2d Cir. 2010*)* ("A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.") (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, (2000)); *see also Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972 (1997). Here, the arbitration agreements are not unconscionable and therefore fully enforceable.[6]

After the Supreme Court's ruling in *Concepcion*, New York courts have consistently enforced consumer arbitration agreements and rejected arguments of unconscionability.[7] *See, e.g., Damato*, No. 13-CV-994 ARR RML, 2013 WL 3968765 at *13 (finding agreement not unconscionable under New York and California law);

---

*People v. Int'l Fid. Ins. Co.*, 185 Cal. App. 4th 1391, 1396 (2010); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). Further, the parties' intent is to be inferred, if possible, solely from the written provisions of the contract. *Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 566 (2010); *see also Reigelsperger v. Siller*, 40 Cal.4th 574, 579-80 (2007) (enforcing arbitration clause where contract demonstrated parties' intent to arbitrate); *Directv, a Delaware corporation v. Factory Mut. Ins. Co.*, 160 F. Supp. 3d 1193, 1197 (C.D. Cal. 2016).

[6] As noted above, it is Plaintiff's burden, not AdoreMe's burden, to prove the arbitration clause is unenforceable. By highlighting the enforceability of Plaintiff's arbitration agreements here, AdoreMe is not in any way assuming the burden of proof with respect to this issue.

[7] As have California courts. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052 (9th Cir. 2013); *Flores v. West Covina Auto Grp.*, 212 Cal. App. 4th 895 (2013); *Mance v. Mercedes-Benz USA*, 901 F.Supp.2d 1147, 2012 WL 4497369 (N.D. Cal. 2012).

*Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-CV-2293 NGG RER, 2014 WL 10518555, at *1 (E.D.N.Y. Aug. 12, 2014), report and recommendation adopted, No. 11-CV-2293 NGG RER, 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015); *In re Conifer Realty LLC (EnviroTech Servs., Inc.)*, 964 N.Y.S.2d 735, 739 (2013).

### 1. **Plaintiff Must Prove Her Arbitration Agreement to be both Procedurally and Substantively Unconscionable to Render it Unenforceable**

Under New York law unconscionability has procedural and substantive elements and a contract provision is unenforceable only if it is both procedurally and substantively unconscionable.[8] *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) ("Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable."); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569 (1998). Further, "[a]contract is unconscionable when it 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms.'"[9] *Nayal IPA, Inc.*, 620 F. Supp. 2d at 571 (quoting *Gillman v. Chase Manhattan Bank*, N.A., 537 N.Y.S.2d 787 (1988). "The purpose of this doctrine is not to redress the inequality between the parties but simply to ensure that the more powerful party cannot 'surprise' the other party with some overly oppressive term." *Brower*, 246 A.D.2d at 253; *Bar-Ayal*, No. 03 CV 9905 KMW, 2006 WL 2990032, at *15 ("Ultimately, the purpose of the unconscionability doctrine 'is to prevent oppression and unfair surprise, not to readjust the agreed allocation of the risks in the light of some perceived imbalance in the parties' bargaining power.'") (citation omitted). The unconscionability standard

---

[8] California law is in accord. *Mohamed v. Uber Technologies, Inc.*, 836 F.3d 1102, 1110 (9th Cir. 2016) (citing California cases); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015).

[9] Likewise, the California's standard is similar. *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245 (2016) ("unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain" rather unconscionable contracts are those that are "so one-sided as to shock the conscience.").

19

must be the same for arbitration and nonarbitration agreements.  *Concepcion*, 131 S. Ct. at 1746; *Sanchez*, 61 Cal.4th at 912.  As discussed below, Plaintiff cannot show that the arbitration agreement is both procedurally and substantively unconscionable and therefore the arbitration agreement is fully enforceable.

## 2. Plaintiff's Arbitration Agreements Are Not Procedurally Unconscionable

"As to the procedural element, a court will look to the contract formation process to determine if in fact one party lacked any meaningful choice in entering into the contract, taking into consideration such factors as the setting of the transaction, the experience and education of the party claiming unconscionability, whether the contract contained 'fine print,' whether the seller used 'high-pressured tactics' and any disparity in the parties' bargaining power."[10]  *Brower*, 246 A.D.2d at 253.  Though "[i]nequality of bargaining power alone does not invalidate a contract as one of adhesion when the purchase can be made elsewhere." *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, (2003); *Nayal*, 620 F. Supp. 2d at 571 ("Second, even if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis and HIP refused to negotiate the Arbitration Provision, this is not sufficient under New York law to render the provision procedurally unconscionable.")

Here, Plaintiff cannot meet her burden of showing that she did not have a meaningful choice.  Plaintiff had the choice to decline to shop on AdoreMe's website and instead purchase products from competing retailers.  AdoreMe has many

---

[10] In California, "[t]he procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power…Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 246 (2012).  AdoreMe "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention. Any state law imposing such an obligation would be preempted by the FAA." *Sanchez*, 61 Cal.4th at 914.  Adhesion contracts are fully enforceable.  *See Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819-20 (1981).

competitors which sell women's lingerie and clothing, including online merchants such as such as Amazon.com and Victoria's Secret nationwide.[11],[12]  *See Brower*, 246 A.D.2d at 252 ("the ability to make the purchase elsewhere and the express option to return the goods, the consumer is not in a "take it or leave it" position at all; if any term of the agreement is unacceptable to the consumer, he or she can easily buy a competitor's product instead"); *Ranieri*, 304 A.D.2d at 354 ("It does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider."); *Bar–Ayal,* 9905, 2006 WL 2990032, at *16 (refusing to find arbitration provision unconscionable because plaintiff "has not provided any evidence that he could not obtain high-speed Internet service from another provider.").

Further, there is no surprise in either the Updated or Original TOUs because the terms were not in fine print.  *Brower*, 246 A.D.2d at 253.  Instead, the opposite is true— the terms are not procedurally unconscionable because they are capitalized, bolded, and not "buried in fine print." *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009).  The AdoreMe Sign-Up Webpage, Checkout Webpage, and Shopping Bag Page prominently linked the Terms of Use. (Lucaciu Decl., ¶¶ 5-6, 8, Exs. B, C, F.)  The arbitration provisions are highlighted within the agreements: in the Original TOU the arbitration provision is located under a capitalized header, while the Updated TOU gives notice of the arbitration provision, capitalized and in bold, in the first sentence and the class action waiver is referenced in the third and fourth paragraph, all on the first page.  Further, the Updated TOU capitalize, underline, and boldface

---

[11] *See*, *e.g.*, https://www.victoriassecret.com/lingerie;   https://www.amazon.com/Lingerie-Sets-Intimate-Clothing-Women/b?ie=UTF8&node=1044962.

[12] California courts have found adhesion contracts not procedurally unconscionable for this reason.  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768, 259 (Ct. App. 1989) (collecting California cases).

especially important terms of the arbitration provision.  In short, any customer who read AdoreMe's Terms of Use would have been aware of and should have been able to understand AdoreMe's arbitration and class action waiver provisions.[13]  Additionally, Plaintiff cannot claim surprise because she discussed the Updated TOU in her Complaint and then subsequently agreed to those TOU when she purchased three more articles of clothing from the website.  (Lucaciu Decl., ¶ 8.)

Lastly, Ms. Lira faced no "high pressure tactics."  In fact, Ms. Lira faced no pressure it all.  She was free to shop from the comfort of her own home, without contact with any salesperson.  (*Id.*, ¶ 2.)  Further, Ms. Lira had the option to purchase the products on a "pay as you go" basis if she so wished; her decision to become a VIP Member was made on her own volition and before purchase she had the ability to review the Original and Updated TOU at her leisure.  (*Id.*, ¶¶ 5-6, 8.)

Because Ms. Lira had choices in selecting a clothing vendor, both sets of TOU highlighted the arbitration provision and Ms. Lira faced no pressure to buy the products, Ms. Lira cannot establish the essential element of procedural unconscionability. *Anonymous v. JP Morgan Chase & Co.*, No. 05 CIV. 2442 (JGK), 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) ("The arbitration clause is clearly set out in all-caps following a heading in all-caps and bold print titled 'Arbitration Agreement.' The

---

[13] Plaintiff cannot claim "surprise" because both Terms of Use  incorporate AAA rules via the following language: "the Supplementary Procedures for Consumer Related Disputes (collectively, the "AAA Rules") of the American Arbitration Association (the "AAA"), as modified by these Terms, and will be administered by the AAA. The AAA Rules are available online at www.adr.org or by calling the AAA at 1-800-778-7879." (Ex. D, Original TOU., Arbitration Agreement(C); Ex. E, Updated TOU, p. 12.)   Courts have found similar incorporation perfectly consciable.  *Fagerstrom*, 141 F. Supp. 3d at 1070–71 ("The test, however, is whether Plaintiffs had a "reasonable opportunity" to understand important terms, not whether Amazon outlined the terms with maximum clarity… A reasonable consumer would assume that the "Consumer Arbitration Rules" apply, particularly given Amazon's reference to the AAA's "Supplementary Procedures for Consumer–Related Disputes" in the Agreement…The Consumer Rules appear on the first page of the AAA website's listing of rules and require no special web-browsing expertise to locate…And to the extent that consumers have questions about the applicable rules, they can call the AAA's toll-free number provided by Amazon in the Arbitration Agreement…Thus, the Court finds that  while the reference to the applicable rules could be clearer, the degree of ambiguity involved does not rise to the level of procedural unconscionability.") (citations omitted).

provision is clearly written. The plaintiff signed the Agreement without any high-pressured sales tactics used on him. He was free to go to other credit card issuers.")

### 3. Plaintiff's Arbitration Agreement Is Not Substantively Unconscionable

The arbitration agreement is also not substantively unconscionable. "Substantive unconscionability focuses on the effects of the contractual terms and whether they are overly harsh or one-sided." *Damato*, No. 13-CV-994 ARR RML, 2013 WL 3968765, at *7 (finding New York and California law in accord); *Pinnacle Museum Tower Ass'n*, 55 Cal.4th at 246 ("Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided…A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to shock the conscience."). Far from shocking the conscience, the arbitration agreements here are even-handed and fair.

The Updated TOU bilaterally requires AdoreMe and the customers to "make a good faith sustained effort to resolve the dispute" before proceeding with arbitration. (Ex., D, Updated TOU, pg. 11.) In both the Original and Updated TOU, both parties are required to arbitrate all claims (except those submitted to small claims court) that they are unable to resolve informally. Both parties are governed by the same procedural requirements and arbitration rules. The arbitrations are to be conducted by the American Arbitration Association ("AAA"), pursuant to its rules, including consumer-friendly procedures specifically designed for consumer disputes. (Lucaciu Decl., ¶ 10.) Plaintiff may schedule the arbitration in her local area. (*Id*.) Additionally, AdoreMe agrees to pay for all arbitration and administration fees and legal fees up to a maximum of $5000, regardless of the outcome of the litigation. (*Id*.) This amount is several magnitudes greater than the restitution Ms. Lira seeks for herself. (Complaint, Prayer.) Consequently the arbitration agreements at issue are not substantively unconscionable and therefore should be enforced.

LEGAL02/36476181v1

IV.   **<u>CONCLUSION</u>**

Plaintiff is contractually required to arbitrate her claims.  AdoreMe respectfully requests that the Court grant AdoreMe's motion and stay this matter pursuant to Section 3 of the FAA until the arbitration is completed.

DATED: December 1, 2016          Respectfully submitted,

ANDREW E. PARIS
ALEXANDER AKERMAN
**ALSTON & BIRD LLP**

/s/ Andrew E. Paris
                              Andrew E, Paris
Attorneys for Defendant
**ADOREME, INC.**

LEGAL02/36476181v1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 1 st day of December 2016.


_/s/  Andrew E. Paris_

Andrew E. Paris